309 So.2d 686 (1974)
SCHWEGMANN BROS. GIANT SUPER MARKETS, INC., et al.
v.
Ashton J. MOUTON, Collector of Revenue, State of Louisiana.
Ashton J. MOUTON, Collector of Revenue
v.
SCHWEGMANN BROTHERS GIANT SUPERMARKETS.
Nos. 6398 and 6399.
Court of Appeal of Louisiana, Fourth Circuit.
November 7, 1974.
Rehearing Denied February 20, 1975.
Writs Refused April 18, 1975.
*687 James A. Norris, Jr., Baton Rouge, for appellee.
Stone, Pigman, Walther, Wittmann & Hutchinson, Paul O. H. Pigman, David L. Stone and Salvador Anzelmo, New Orleans, for appellant.
Before SAMUEL, LEMMON and MARCEL, JJ.
SAMUEL, Judge.
These are two consolidated matters in which the Louisiana Collector of Revenue seeks to collect Louisiana sales, use and occupational license taxes, plus interest and attorney fees, from Schwegmann Brothers Giant Super Markets, Inc., John Schwegmann Trust #2 and Guy Schwegmann Trust #2, trading as Schwegmann Brothers Giant Super Markets. One case, No. 6398 of our docket, arose from assessments in 1965 by the Collector against the Schwegmann interests of sales, use and occupational license taxes plus interest, in a total sum of $62,517.98. Schwegmann appealed these assessments to the Louisiana Board of Tax Appeals,[1] which rendered judgment in favor of the Collector holding Schwegmann liable for the sums assessed. Schwegmann then filed a petition in the Civil District Court for the Parish of Orleans for a review of the judgment rendered by the Board.[2]
Several months after the filing of the petition to review, the Collector filed an additional suit No. 6399 of our docket, to collect from Schwegmann by summary proceeding sales taxes, plus interest and attorney's fees, in the total sum of $103,290.59. Schwegmann answered, denying liability. The two cases were consolidated in the trial court by consent of the parties.
After trial, judgment was rendered in favor of the Collector and against Schwegmann *688 on all issues, including awards of attorney fees in both matters. The judgment subsequently was amended only to allow Schwegmann compensation for the collection of sales taxes. Schwegmann then filed a suspensive appeal to this court. The Collector answered the appeal seeking modification of the judgment to disallow any compensation to Schwegmann as a dealer for the collection of the sales taxes.
In both cases the Collector seeks to recover alleged amounts of sales taxes, in excess of the 2% state tax, collected and retained by Schwegmann. The period covered by the first case is from January 1, 1961 through December 31, 1964 and the period covered in the second is from January 1, 1965 through June 30, 1969. The question of Schwegmann's tax liability for use and occupational license taxes is only involved in the first suit. However, in this court appellants do not contest the part of that judgment which involves use and occupational license taxes. The only issues before us involve sales taxes.
State sales tax during the periods in question was set by law at 2% of the retail sale of tangible personal property.[3] The law provided the tax shall be collectible from all persons who sell or offer to sell tangible personal property for sale at retail, and those persons were required to collect the tax directly from the consumer.[4] Any dealer who did not collect the tax was obligated to pay it himself, and when the actual tax collection exceeded 2%, the total tax collected, including the excess tax collected, was payable by the dealer to the Collector of Revenue.[5]
A practical problem in the administration of the sales tax arises when the sale price for the taxable item does not equal an even dollar amount. When the sales price equals a dollar amount plus a fraction of a dollar, for example the sum of $2.78, strict application of the 2% tax would result in a tax including a fraction of a cent. To solve this problem, the legislature expressly forbade the use of tokens, but instead directed the Collector by administrative regulation to prescribe the method and a schedule of the amounts to be collected from purchasers by dealers to eliminate fractions of one cent while at the same time resulting in the collection of a tax equal to 2% of the total sale, as far as practicable.[6]
In compliance with this requirement, the Collector promulgated the following schedule to be used by retail dealers in the collection of the 2% Louisiana sales tax:

 2%
 Louisiana General Sales Tax
Amount of Sales Collect
 $0.01  $0.24 .00
 0.25  0.66 .01
 0.67  1.16 .02
 1.17  1.66 .03
 1.67  2.16 .04
 2.17  2.66 .05
 2.67  3.16 .06
 3.17  3.66 .07
 3.67  4.16 .08
 4.17  4.66 .09
 4.67  5.16 .10
 5.17  5.66 .11
 5.67  6.16 .12
 6.17  8.16 .16
 6.67  8.66 .17
 7.17  7.66 .15
 7.67  8.16 .16
 8.17  8.66 .17
 8.67  9.16 .18
 9.17  9.66 .19
 9.67  10.66 .20

Testimony before the Board of Tax Appeals establish Schwegmann used this schedule for sales tax collection and *689 Schwegmann admits in its brief before this court that the schedule was in fact used.
Statistical analysis of large numbers of sales shows use of the tax brackets schedule promulgated by the Collector produces excess sales tax collection, which must be paid by the retailer to the state in addition to the normal 2% sales tax.[7] Since even dollar and ½ dollar amounts result in an even 2% collection, there are ninety-eight possible prices between these even amounts which would result in a sales tax including a fraction of a cent. The testimony establishes that the schedule promulgated by the Collector results in an overcollection in approximately sixty-two cent areas as against an undercollection in approximately thirty-seven cent areas. The larger the volume of sales for any given business, the more statistically accurate this analysis of the Collector's promulgated tax bracket schedule would be. Schwegmann's operation, which included several large retail stores, resulted in an extremely high dollar volume of sales, and Schwegmann does not argue that its sales volume is too small to render statistically invalid application of the practical effect of the Collector's tax bracket schedule to its gross sales in order to arrive at the total sales tax actually collected.
During all the taxable years in question, Schwegmann computed its sales tax liability for each taxable year by ascertaining the total of gross receipts, including sales taxes collected, and then dividing that sum by 1.02. The result of this division was then subtracted from gross receipts to yield an amount which Schwegmann reported as its total sales tax liability. This method theorizes that if exactly 2% tax is collected on each sale, 100% of the gross receipts will represent taxable sales and 2% will represent sales tax liability.
The method used by Schwegmann to calculate sales tax liability was not in compliance with any of the methods accepted by the Collector. These methods were: (1) the use of cash registers which have keys to record exactly the sales tax collected on each sale; (2) the use of a separate box into which are deposited all sales taxes collected at the time of collection; (3) the use of a formula of ratio of sales taxes collected to gross sales based upon actual experience of the retailer as determined by the Collector periodically checking actual sales and receipts; and (4) the use of any other method which is proposed by the tax payer and approved by the Collector as truly reflecting the amount of taxes collected.
The Collector argues Schwegmann in fact collected sales taxes over and above the 2% remitted by it. He further argues that to permit Schwegmann to retain excess collected sales taxes would result in Schwegmann making a profit at the expense of the customer and the state, since a retail dealer is the agent of the state for collection of sales taxes.[8] By three separate and distinct factors he has attempted to show Schwegmann collected unremitted excess sales taxes. These factors are: (1) analysis of the collected sales tax bracket schedule admittedly used by Schwegmann; (2) the actual experience of similar businesses; and (3) an audit of some of Schwegmann's cash register receipts.
The sales tax bracket schedule promulgated by the Collector and used by Schwegmann has been discussed above. To reiterate, it contains sixty-two cent amounts which result in an overcollection versus thirty-seven cent amounts which result in an undercollection of taxes. Consequently, if correctly applied, without error, to every sales transaction by a dealer, the schedule would produce an overcollection.
Schwegmann argues the Collector is not to be presumed to have violated the statute directing him to promulgate a bracket that produces a correct tax as far *690 as practicable on total receipts; that it must be presumed the bracket schedule is designed to yield collection of the correct amount of tax; and that the apparent tendency of the bracket schedule toward overcollection is intended to compensate for inevitable instances of undercollection or failure to collect sales tax for specific transactions as a result of clerical error.
This argument is to no avail. Revised Statute 47:302 specifically directs the collection of state sales tax at 2% of the gross sale. The Collector is not authorized to collect a tax less than the general rate of 2%. Moreover, it is clear from a reading of R.S. 47:304 that the legislature in fact contemplated that the promulgation of a bracket schedule by the Collector could result in a collection of a tax in excess of the 2% provision and expressly directed that any such excess be paid to the Collector by the retailer.[9]
Assuming arguendo that the Collector did go beyond his statutory authority in promulgating the sales tax bracket schedule in such a way as to produce the calculated overpayment of sales tax, it is nevertheless the statutory duty of the retailer to transmit such excess to the Collector in accordance with R.S. 47:304. Regardless of the promulgation of the schedule, the retailer may not retain the excess funds for his own benefit.[10]
Evidence introduced before the Board of Tax Appeals with regard to actual experiences of other businesses also tends to establish that the use of schedules promulgated by the Collector produces excess sales tax collections. This type of evidence is comparatively weaker, since no two businesses are precisely identical and it cannot be said that one business collects excess taxes simply because another business does so. Nevertheless, of the nineteen somewhat similar businesses listed by the Collector before the Board of Tax Appeals, eight pay their sales taxes at a rate established through the Collector's audits, and all eight pay excess sales tax to the state. Eight other businesses in the list of nineteen remit actual collections of sales taxes, and the evidence tends to show that each pays excess sales tax to the state in a proportionate amount at least equal to the deficiency here assessed against Schwegmann.
The audit made by the Collector shows its state sales tax collections were.02023628% of gross retail sales, constituting an excess sales tax collection of.00023628%. However, the Collector established an effective rate of collection, and seeks payment, of .0202%, allegedly the minimum rate of excess collection as established by experience of similar businesses, or .00003628% less than the audit showed as Schwegmann's actual effective rate of sales tax collection.
The Collector has the legal duty to compute and collect the correct tax payable by the retailer.[11] In doing so, he may investigate and examine the retailer's records and may make an audit for the purpose of determining the correct amount of tax.[12]
Schwegmann argues the audit performed by the Collector's agent was inaccurate and based on totally nonrepresentative data. The contention is that the average sale per customer for all sales examined by the auditors was only $3.64 while in fact the average sale per customer for all sales of *691 groceries and drugs in Schwegmann's stores is more than $27.00. The importance of this difference is based on the fact, apparently conceded by the Collector, that the higher the amount of a sale, the lower the amount of excess collection. Schwegmann furnishes the following example. On a sale of $2.25, a sales tax of 2% would equal 4½ cents. Application of the Collector's bracket schedule, however, requires collection of a tax of 5 cents, or an overcollection of ½ cent. On a sale of $202.25, the precise amount of tax would be $4,045 cents. Application of the Collector's bracket schedule requires the collection of tax in the amount of $4.05, also an overcollection of ½ cent. However, expressed as a percentage of total sales, an overcollection of ½ cent on a sale of $2.25 is approximately ninety times as great as an overcollection of ½ cent on a sale of $202.25. Schwegmann argues the Collector's audit actually was based on low volume sales in order to inflate the amount of the overcollection.
The audit is based on sales made during the business days of Monday, October 26, 1964, and Friday, October 30, 1964. The transcript before the Board of Tax Appeals reveals that on the suggestion of Schwegmann's representatives the Collector's representatives agreed to omit sales from lunch counters and express counters, where the individual sales are in smaller amounts. The Collector's representatives then selected two registers in the grocery department and one in the drug department of each store. A Monday was chosen as representative of a low volume day and a Friday was chosen as representative of a high volume day. Tapes were saved from these days from the registers selected, and the audit is based on these tapes.
The results of the audit are substantially uncontradicted and were accepted by both the Board of Tax Appeals and by the trial court. The only evidence to refute the findings of the audit was the testimony offered by Wilfred I. Meyer, an executive of Schwegmann Brothers for more than 20 years. Mr. Meyer testified the average sale in Schwegmann Brothers is at least $27.00. However, on cross examination, Mr. Meyer admitted lack of knowledge as to the method of how that figure was computed; he relied entirely upon a figure derived in some unknown manner by an unnamed person whose only stated qualification was an unnamed degree from the University of Alabama. It is significant to note Schwegmann offered no audit or other figures of its own to contradict the Collector's audit, which remained effectively unimpeached.
In a second attack on the audit, Schwegmann argues the deficiencies claimed by the Collector are based not on actual over-collections, but on a ficticious projection so that they exceed the Collector's authority under R.S. 47:304. The argument is based on a statement made by the technical director of the Louisiana Department of Revenue while he was describing the audit procedure. He said the auditors determined the amount of tax which would have been collected by Schwegmann if the Collector's tax bracket schedule had been applied correctly in every single transaction without clerical error.
The auditors eliminated sales of large appliances as nonrepresentative. Then from the tapes used in the audit, they recorded gross sales, the total amount of tax shown collected, or the amount which should have been collected if the latter was less than the amount shown collected. It was freely admitted that in some cases excess taxes were collected and in others less than the proper tax was collected. In any event, the amount of tax required by the Collector's tax bracket schedule was put down as the basis for computing the ratios upon which the deficiency was assessed. The Collector's personnel freely admitted the records supplied did not permit them to know exactly what Schwegmann collected, but they testified the audit accurately reflects what Schwegmann should have collected *692 under the Collector's tax bracket schedule promulgated under the authority of R.S. 47:304 and used in its stores.
The common thread running through the entire record of these proceedings, whether stated or unstated, is the efficiency of Schwegmann's records and its failure to accurately account for gross sales separately from sales tax collected. The statute requires that the dealer keep such records as may be necessary to determine the amount of tax due. Revised Statute 47:309, in pertinent part, sets forth this duty as follows:
"Every dealer required to make a report and pay any tax under this Chapter shall keep and preserve suitable records of the sales, purchases, or leases taxable under this Chapter, and such other books of accounts as may be necessary to determine the amount of tax due hereunder, and other information as may be required by the collector; ..." LSA-R.S. 47:309.
An analogous problem was faced by the Ohio Supreme Court in Russo v. Donahue.[13] In that case, the court held, and we agree, that retailers who do not keep records were not entitled to have taxes remittable to the state limited to the exact statutory rate but could be required to remit excess collected taxes in accordance with a "test check" which indicated that such excess taxes were being collected from customers. The court stated the duty of a tax collecting body faced with improper records as follows:
"It appears to be the general rule, and common sense would dictate, that if a tax payer fails to keep proper records, or for some other reason exact information is unavailable, some formula must be devised to determine the tax established by legislative authority."
In the same case the court further stated:
"In the absence of a clear prohibition in any part of the statute against the use of such information as the Tax Commissioner may have in his possession as a result of test checks of representative periods of a particular vendor's business, we see no reason why such test-check information may not be used by the Tax Commissioner alone or together with other information as a basis of an assessment."
Here the Collector made his assessment of excess taxes on the basis of his audit of the Schwegmann businesses. No contrary evidence was introduced to effectively refute the audit, even though Schwegmann presumably had all of its records at its disposal. Thus, there appears to be a lack of record keeping by Schwegmann sufficient to enable it to establish the amount of sales tax and excess sales tax collected by it during the periods in question. That duty is upon Schwegmann pursuant to R.S. 47:309, supra, and Schwegmann has failed to meet that burden. Consequently, there is no evidence in the record sufficient to overturn the assessments made by the Collector.
There are three subordinate issues before us. First, the original judgment was amended to allow compensation to Schwegmann for collection of sales taxes involved in these proceedings. The Collector timely answered the appeal and requested disallowance of this award. We agree the award must be disallowed.
The law is clear that Schwegmann was entitled to compensation for its services in aiding the state in the collection of sales taxes only when "the amount due was not delinquent at the time of payment ..."[14] Payment was due by the 20th day of each month for the amount collected by the dealer in the preceding month, and this prerequisite for dealer's compensation was not met. Thus, Schwegmann is not entitled to the compensation awarded.
We also find error in an award of interest made in accordance with Act 663 *693 of 1970. Revised Statute 47:1601, as enacted by Act 23 of 1950, provided for interest on unpaid sales taxes at the rate of 6% per annum for the first four years and 3% per annum thereafter. Act 663 of 1970, effective July 29, 1970, amended R.S. 47:1601 and increased the interest to 1% per month for the first four years and ½% per month thereafter, in effect more than doubling the interest rate. The trial court awarded interest under the 1950 Act until the effective date of the 1970 Act and then awarded interest at the rate provided in the 1970 Act until paid. Schwegmann contends all deficiencies asserted against it became due and were asserted before the effective date of Act 663 of 1970 and that Act cannot be applied retroactively. We agree.
In Parish of Calcasieu v. Traigle,[15] the court held Act 663 of 1970 is not retroactive and the increased rate is not applicable to taxes assessed prior to its passage. We reach the same conclusion and we will amend the judgment accordingly.
Finally, Schwegmann argues the Collector is not entitled to recover 10% attorney fees, which the judgment awards pursuant to R.S. 47:1512, because counsel for the Collector performed "substantially all legal services while he was an employee of the Department."
Revised Statute 47:1512 provides as follows:
"The collector is authorized to employ private counsel to assist in the collection of any taxes, penalties or interest due under this Subtitle, or to represent him in any proceeding under this Sub-title. If any taxes, penalties or interest due under this title are referred to an attorney at law for collection, an additional charge for attorney fees, in the amount of ten per centum (10%) of the taxes, penalties and interest due, shall be paid by the tax debtor." LSA-R.S. 47:1512.
The statute authorizes the Collector to recover 10% attorney's fees when he employs private counsel. However, the words "private counsel" must be construed to mean just that. In Daspit v. Sinclair Refining Company,[16] the Supreme Court, in dictum, indicated that 10% attorney's fees would not be awarded to the Collector of Revenue when he was represented by special assistant attorneys general who were employed under a monthly salary by the Department of Revenue. In the recent case of Parish of Calcasieu v. Traigle,[17] in refusing to permit imposition of attorney's fees the court noted that the provisions of R.S. 47:1512 constitute a penalty and that penalties in civil matters are not favored by Louisiana courts. Such statutes are strictly construed and all doubt must be resolved against the imposition of the penalty.[18]
The Collector's answer to Schwegmann's petition in suit No. 6398 of our docket was filed by his attorneys on December 16, 1970. However, the Collector is now represented in that case by private counsel employed by him. One of the four persons whose names appear on the answer as attorneys for the Collector is the present private counsel. By order dated September 5, 1972 the names of the other three attorneys were withdrawn from the record and present counsel was entered as the sole attorney of record for the Collector.
On February 12, 1973, after issue had been joined and after the case had been placed on the call docket, that counsel sought the court's permission to file an amended answer which added to the original prayer only to the extent of seeking court costs and attorney fees. In his memorandum *694 to the trial court urging the allowance of the amendment (Schwegmann opposed the amendment), and in argument before this court, present counsel candidly stated case No. 6398 of our docket was assigned to him while he was employed as legal counsel by the Department of Revenue and that while so employed all work on the case was done solely by him; the names of the other attorneys for the legal division of the Department also were listed on pleadings in the event he was unable to be present at a court appearance. The record is devoid of any reason for the substitution of private counsel and the withdrawal of counsel regularly employed and paid by the Department of Revenue or of any explanation thereof.
It appears clear to us that it would be unconscionable to force the tax debtor to pay the additional 10% attorney fees in a case where the matter had been reduced to final judgment solely through the efforts of the collector's legal department and that judgment simply turned over to private counsel to collect. The facts in the example given are not the same as those in case No. 6398 of our docket, but we believe that case is sufficiently close to the example so as to require the disallowance of attorney fees. Because of the penal nature of the statute, and because most of the legal work was performed by the now private counsel while he was employed by the Collector, no award for attorney fees should be made against the tax debtor under R.S. 47:1512. The judgment will be amended accordingly.
As there is no indication that the present private counsel performed any work in case No. 6399 of our docket while he was employed by the Collector, we will not disturb the award of attorney fees in that case.
For the reasons assigned:
The judgment appealed from in proceeding No. 6398 of our docket is amended by deleting therefrom all reference to the compensation allowed a dealer, by making the additional interest payable as provided by Section 1 of Act 23 of 1950, by deleting therefrom all reference to Act 630 of 1970, and by deleting therefrom the award of attorney's fees.
The judgment appealed from in proceeding No. 6399 of our docket is amended by deleting therefrom all reference to any compensation allowed a dealer, by making the additional interest payable as provided by Section 1 of Act 23 of 1950, and by deleting therefrom all reference to Act 630 of 1970.
As thus amended, and in all other respects, the judgments appealed from are affirmed; costs of these appeals to be paid by the appellants.
Amended and affirmed.
LEMMON, Judge (dissenting in part from the denial of rehearing).
I vote to grant a rehearing in No. 6398, limited to the issue of awarding attorney's fees to private counsel employed by the Collector.
While our original opinion was technically correct in stating "the matter had been reduced to final judgment" before private counsel was employed (see C.C.P. art. 1841), the so-called "final judgment" was a decision of the Board of Tax Appealsa decision which had not become definitive and acquired the authority of the thing adjudged (C.C.P. art. 1842) because of Schwegmann's timely petition for review to the Civil District Court.
After Schwegmann's petition for review, the Collector's legal division answered and filed a trial brief. The record discloses no further action until August, 1972, when the Collector's present attorney was entered as counsel of record, the motion stating he had been employed in a private capacity. Present counsel filed motions to consolidate and to fix for trial, and an amended answer, demanding attorney's fees under R.S. 47:1512. Counsel thereafter attended pre-trial conferences and arguments and *695 filed extensive briefs in this court and in the trial court.
These facts give rise to two legal issues:
1. Is R.S. 47:1512 applicable when the Collector employs private counsel to handle the collection of taxes after a decision in favor of the Collector by the Board of Tax Appeals has been appealed?
2. Is R.S. 47:1512 applicable when the private counsel so employed had previously performed legal services in the same case while employed in the Collector's legal division?
I would answer both questions affirmatively.
A negative answer to the first question would be equivalent to a decision that the proceedings in the district court and the appellate court are unimportant and insignificant steps in the collection, a position to which I am unwilling to subscribe. The successful collection of the taxes sought was far from accomplished when present counsel took over the handling of the case in a private capacity. Indeed, it is only at the stage in which present counsel handled the case that the legal issues receive judicial consideration.
Present counsel has competently and diligently performed extensive legal services after being employed in a private capacity. In my opinion R.S. 47:1512 applies when private counsel employed by the Collector performs substantial legal services in the ultimate collection of taxes, even if the Collector's legal division had performed extensive preliminary work earlier in the case.[1]
As to the issue of previous employment in the Collector's legal division, present counsel admittedly performed extensive work in that capacity on No. 6398, but he also performed extensive legal services after he was retained as private counsel. To deny present counsel attorney's fees on the basis that he previously worked on the case while employed by the Collector would effectively limit the Collector in his selecting private counsel to assist in tax collections.
In the present case the Collector selected a competent attorney who was not only experienced in this particular field, but who was familiar with all aspects of the particular case. If the Collector had employed other private counsel at the same stage of the proceedings, the Collector would owe a fee to private counsel in my view, and R.S. 47:1512 would be applicable to require the taxpayer to pay this fee. In my opinion the statute should equally apply to the employment of this particular attorney who had worked on the case before entering private practice.
NOTES
[1] R.S. 47:1431.
[2] R.S. 47:1434.
[3] R.S. 47:301: R.S. 47:302 et seq.
[4] R.S. 47:303; R.S. 47:304.
[5] R.S. 47:304.
[6] R.S. 47:304.
[7] R.S. 47:304.
[8] R.S. 47:306(A).
[9] R.S. 47:304 provides in pertinent part as follows:

"Where the tax collected for any period is in excess of two per centum (2%), the total tax collected must be paid over to the collector of revenue, ... This provision shall be construed with other provisions of this Chapter and given effect so as to result in the payment to the collector of revenue of the total tax collected if in excess of two per centum (2%)." (Emphasis ours).
[10] See, for example, Kitsap-Mason Dairymen's Association v. Washington State Tax Commission, 77 Wash.2d 812, 467 P.2d 312 (1970).
[11] See R.S. 47:306(A).
[12] R.S. 47:1541; R.S. 47:1562.
[13] 10 Ohio St.2d 201, 226 N.E.2d 747.
[14] R.S. 47:306(A).
[15] La.App., 296 So.2d 418.
[16] 198 La. 9, 3 So.2d 259 (1941).
[17] 296 So.2d 418, supra, footnote 15.
[18] See also Quality Contractors, Inc. v. State Licensing Board of Contractors, La.App., 206 So.2d 738; Tichenor v. Tichenor, 190 La. 77, 181 So. 863.
[1] In this respect we approved an award of attorney's fees in No. 6399, although counsel in that case performed the exact legal services after being employed at the identical stage of the proceedings as in the present case.

In Chicago Bridge and Iron Co. v. Cocreham, 303 So.2d 750 (La.App. 1st Cir., 1974), cert. granted, La., 307 So.2d 633 (1975) the court granted attorney's fees when private counsel was employed after the taxpayer had paid under protest most of the taxes claimed and had filed suit in district court for a refund.